UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAWRENCE BASTA,

                              DECISION AND ORDER

                        Plaintiff,

                              18-CV-0986L

                v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

## PRELIMINARY STATEMENT

Plaintiff Lawrence A. Basta ("Basta") appeals from a denial of his application for a period of disability and disability insurance benefits ("DIB") by the Commissioner of Social Security (the "Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On November 21, 2014, Basta filed an application for DIB, alleging an inability to work since May 30, 2013. (Tr. 73, 141-42).[1] On February 10, 2015, the Social Security Administration denied Basta's application, finding that he was not disabled. (Tr. 73-83). Basta requested and was granted a hearing before an administrative law judge. (Tr. 95, 108-13). Administrative Law Judge Paul Georger (the "ALJ") conducted the hearing on April 18, 2017, at which both Basta and vocational expert Jay Steinbrenner (the "VE") testified. (Tr. 30-72). In a decision dated July 18, 2017, the ALJ found that Basta was not disabled and was not entitled to DIB. (Tr. 17-29). On

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 5) utilize the internal Bates-stamped pagination assigned by the parties.

July 13, 2018, the Appeals Council denied Basta's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). Basta then commenced this action on September 11, 2018, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently pending before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 10, 11). For the reasons set forth below, Basta's motion (Dkt. # 10) is granted to the extent that this the matter is remanded for further proceedings consistent with this decision, and the Commissioner's cross motion (Dkt. # 11) is denied.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II. The ALJ's Decision

Here, at step one of the sequential evaluation, the ALJ found that Basta had not engaged in substantial gainful activity since May 30, 2013 – the alleged onset date. (Tr. 19). At step two, the ALJ found that Basta had the following severe impairments: coronary artery disease, diabetes, diabetic neuropathy, degenerative disc disease of the lumbar spine, and obstructive sleep apnea. (*Id.*). At step three, the ALJ found that such impairments, alone or in combination, did not

medically equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations. (Tr. 20).

Next, the ALJ determined that Basta retained the RFC to perform sedentary work, except that he was limited to occasional climbing of ramps, stairs, ladders, ropes, or scaffolds, and to occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 21). At step four, the ALJ found that Basta could not perform his past relevant work as a human resource advisor. (Tr. 24). As far as vocational factors, the ALJ stated that Basta was 59 years old on the alleged disability onset date, which qualified him as an "individual of advanced age," that Basta had "subsequently changed age category to closely approaching retirement age," and that he had at least a high school education and was able to communicate in English. (*Id.*).

At step five, the ALJ, relying on the VE's testimony, found that Basta had acquired the work skills of "supervision of personnel clerks and payroll clerks" from his past relevant work as a human resource advisor, which were "transferable to other occupations with jobs existing in significant numbers in the national economy," specifically, the jobs of personnel clerk and payroll clerk. (Tr. 24-25). The ALJ concluded that Basta's past relevant work was "so similar to the jobs [of personnel clerk and payroll clerk] that [Basta] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work setting, or the industry." (*Id.*). Accordingly, the ALJ found that Basta was not disabled under the Social Security Act. (*Id.*).

III. **Analysis**

Basta contends that the ALJ's disability determination is not supported by substantial evidence and is the product of legal error. (Dkt. # 10). First, Basta argues that the ALJ erred at step five by finding, based on the VE's testimony, that Basta had acquired the transferable skills of "supervision of personnel clerks and payroll clerks" from his past relevant work as a human

resource advisor. (Dkt. ## 10-1 at 17-21; 12 at 2-5). Second, Basta maintains that the ALJ's RFC determination fails to account for his sitting limitations, and that such limitations preclude him from performing work at any exertional level. (Dkt. # 10-1 at 21-25).

As mentioned, Basta challenges the ALJ's determination that he retained the RFC to perform some types of sedentary work, as well as the ALJ's decision, at step five of the sequential evaluation, that Basta had "transferrable skills" to perform other occupations based on his prior work as a human resource advisor.

In sum, I believe the record supports the ALJ's RFC determination. I find, however, that the ALJ's determination concerning transferrable skills is not supported by evidence of record. The Government concedes that the ALJ erred in this regard but claims that it is harmless. I disagree and, therefore, direct that the matter be remanded for further proceedings only on step five, specifically relating to whether plaintiff has transferrable skills. In all other respects, the ALJ's decision is supported by substantial evidence and therefore affirmed.

### A. **Transferable Skills**

Basta disputes the ALJ's finding that he acquired the transferable skills of "supervision of personnel clerks and payroll clerks," stating that he never supervised employees in his past relevant work. As a result, in Basta's view, he did not actually acquire those skills through his past work, and thus they cannot constitute transferrable skills.

At step five of the sequential analysis, it is the Commissioner's burden to prove, based on the claimant's RFC and vocational factors such as age, education, and past work experience, that significant jobs exist in the national economy that the claimant can perform, which the Commissioner can do either by applying the Medical-Vocational Guidelines (the "Grids") or by

offering testimony from a vocational expert. *See Clark v. Berryhill*, 697 Fed. Appx. 49, 50 (2d Cir. 2017) (summary order); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

To account for the effect a claimant's age and work experience has on his or her ability to engage in other substantial gainful activity, the regulations state that:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work . . . that you can do despite your impairment(s).

20 C.F.R. § 404.1568(d)(4). Accordingly, a claimant who satisfies the age requirement in § 404.1568(d)(4) and is limited to sedentary work "is not disabled *only* if []he has skills obtained through h[is] previous work and *only* if those skills are transferable to other jobs in the national economy." *Higgs-Wilson v. Saul*, 2019 WL 2537296, *3 (W.D.N.Y. 2019) (emphasis supplied). Transferability of skills is thus critical for claimants of advanced age. *See Terry v. Sullivan*, 903 F.2d 1273, 1275-76 (9th Cir. 1990) ("it is not enough that persons of advanced age are capable of doing unskilled work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled or semiskilled work"); *see also Bruce v. Colvin*, 2013 WL 781990, *4 (C.D. Cal. 2013) ("Due to the adversity of age as a vocational factor, a person who is of 'advanced age' or 'closely approaching retirement age,' is limited to light work or less, and cannot perform past relevant work, ordinarily must have skills that are transferable to alternative skilled or semi-skilled work in order to be found not disabled.").

In the Social Security context, a skill is "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." *Draegert v. Barnhart*, 311 F.3d 468, 473 (2d Cir. 2002) (citing Social Security Ruling "SSR" 82-41, 1982 WL

5

31389, *1 (1982)). Transferable skills are "skills that can be used in other jobs, when the skilled or semi-skilled work activities [the claimant] did in the past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." *Id.* (citing 20 C.F.R. § 404.1568(d)(1)).

The ALJ determined that Basta's severe impairments limited him to sedentary work, and that his RFC precluded him from performing his past relevant work as a human resource advisor. (Tr. 21, 24). Accordingly, whether Basta acquired skills from his past work, and whether those skills were transferable, were "crucial factors" at step five. *Clark*, 697 Fed. Appx. at 51 (citation omitted).

At the disability hearing, the VE identified several jobs he believed Basta could perform. (Tr. 66-67). Specifically, he testified that Basta could perform the job of personnel clerk, which "would be quite the level of responsibility [Basta] had in the past, but certainly his experience would come into play there." (Tr. 66). The VE also testified, "[a]nother job I would look at, I would think something along the lines of payroll clerk could be done, again utilizing the claimant's past experience." (Tr. 67).

The ALJ adopted the VE's testimony regarding transferability of skills. The ALJ stated that the "vocational expert testified that [Basta's] past relevant work as a human resource advisor (DOT 166.267-046) was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: supervision of personnel clerks and payroll clerks." (Tr. 24). The ALJ then found, in accordance with the VE's testimony, Basta could perform the occupations of personnel clerk and payroll clerk, based on Basta's age, education, past relevant work, and RFC, and that those positions would "require skills acquired in the claimant's past relevant work but no additional skills." (Tr. 25). The problem is that there is no evidence in the record that Basta

actually acquired transferrable skills of "supervision of personnel clerks and payroll clerks" in his prior work as a human resource advisor. I, therefore, agree with Basta that the ALJ's determination concerning transferrable skills is not supported by substantial evidence in the record.

It appears that the vocational expert improperly based his opinion – which the ALJ adopted – on the VE's general understanding concerning the responsibilities of a human resource advisor. He failed however to explore and determine Basta's actual responsibility and experience from his past work to support a finding that he had transferrable skills. As mentioned, the Commissioner concedes that it was error for the ALJ to find that Basta acquired those transferrable skills. (*See* Dkt. # 11-1 at 12).

Thus, there is no evidence in the record detailing how Basta could have acquired the skills of "supervision of personnel clerks and payroll clerks" "*through the performance of past work activities*." *Woods v. Colvin*, 218 F. Supp. 3d 204, 211 (W.D.N.Y. 2016) (emphasis in original) ("Neither the VE nor the ALJ made any effort to link these 'skills' to any actual work activity that [p]laintiff performed when he was the supervisor of operations at a power plant. Therefore, there is not substantial evidence in the record that 'data skills' and 'supervisory skills' are indeed 'skills' that [p]laintiff acquired through the performance of past work activities.").

Therefore, the record does not contain substantial evidence for the ALJ's determination at step five that Basta had transferable skills. *See Clark*, 697 F. App'x at 50 ("When the issue of skill and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.") (citing SSR 82-41, 1982 WL 31389 at *7); *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001) ("When an ALJ makes a finding that a claimant has transferable skills, he

7

must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable.").

I also disagree with the Commissioner that this error was harmless. As referenced above, in this case, transferability of skills is critical in determining whether Basta is disabled. *See* 20 C.F.R. § 404.1568(d)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P., App. 2, R. 201.06 (finding of "disabled" required where claimant is limited to sedentary work, is of advanced age, has a high school education, and has skilled or semiskilled-skills that are not transferable). Because the issue of transferability of skills could be outcome determinative in this case, remand is necessary for the ALJ to elicit further information as to whether Basta acquired skills from his past relevant work and whether those skills are transferable to other employment. *See, e.g.*, *Higgs-Wilson*, 2019 WL 2537296 at 6 (remanding for the Commissioner "to make further, specific findings regarding [claimant's] transferable skills"); *June S. v. Comm'r of Soc. Sec.*, 2018 WL 3626423, *7 (N.D.N.Y. 2018) ("while there was no error regarding the ALJ's application of the treating physician rule, remand is warranted to address what skills [p]laintiff acquired during her past relevant work and the extent to which those skills are transferable to other employment").

Based on the Commissioner's concession of error as to step five in the above analysis, and my determination that such error is not harmless, I determine that the ALJ's decision at step five is not supported by substantial evidence. Therefore, I direct that the case be remanded to the Commissioner for a further factual development of the record.

### B. RFC Determination

As referenced above, I have determined that a remand is necessary based on the issue concerning a transfer of skills. That is, however, the only basis for the remand. In other respects,

8

specifically the ALJ's RFC determination, I believe there is substantial evidence to support the decision on that point.

Basta argues that the ALJ's determination that Basta could perform the prolonged sitting requirement associated with sedentary work was not supported by substantial evidence and that, given his sitting limitations, he cannot perform work at any exertional level on a "regular and continuing basis." (Dkt. # 10-1 at 21-25). Specifically, Basta contends that the consultative medical opinion of Dr. Hongbiao Liu ("Liu") was too vague to support the ALJ's decision, and that the ALJ should have given more weight to the opinions of Sean Hurley ("Hurley"), ANP-BC, and Craig Brattlie ("Brattlie"), PT. Basta also maintains that the ALJ "mischaracterized" his activities of daily living "in an effort to discount the opinions of NP Hurley and PT Brattlie." (*Id.* at 23). Contrary to Basta's arguments, I find that the ALJ's RFC determination is supported by substantial evidence.

The RFC is an individual's "maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR, 96-8p, 61 F.R. 34478, 34479 (1996). "To determine the RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 Fed. Appx. 231 (2d Cir. 2010).

Here, the ALJ determined that Basta retained the RFC to perform sedentary work, except that he could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 21). In reaching this determination, the ALJ considered Basta's own testimony and complaints, the medical evidence, and the medical opinions

in the record. Specifically, the ALJ acknowledged Basta's back pain, finding that Basta's degenerative disc disease of the lumbar spine was a severe impairment (Tr. 19), and that Basta's back impairment caused radiating pain through "his extremities with related numbness," as well as "reduced lumbar range of motion with pain." (Tr. 22 (citing Tr. 250, 304, 315)). The ALJ also recognized Basta's alleged limitations associated with his back pain. (Tr. 21 ("In a prehearing Function Report, [Basta] stated that he has difficulty with personal care, has trouble performing chores longer than short periods . . . and can only stand, walk, or sit for short periods . . . [d]ue to [Basta's] conditions, [he] testified that he [can] only sit for 10 to 15 minutes at a time") (citing Tr. 62, 168-75)).

At the same time, however, the ALJ noted that Basta was observed to be in "no acute distress" at treatment visits in 2014 and 2016 (Tr. 22 (citing Tr. 255, 355)), and that physical examinations consistently "revealed, aside from reduced lumbar range of motion, intact extremity sensation, 5/5 muscle strength, normal reflexes, and a normal gait," (Tr. 22 (citing Tr. 250, 271, 304, 313, 318, 399, 403, 407, 412, 417, 421, 425, 429, 436, 442)). Moreover, the ALJ referenced the activities of daily living Basta reported to consultative examiners Liu and Janine Ippolito ("Ippolito"), Psy.D., on January 23, 2015. (Tr. 23 (citing Tr. 287, 290)). As the ALJ stated, Basta reported at that time that he could cook, clean, do laundry, grocery shop, drive, shower, and get dressed. Basta also stated to Ippolito that he could no longer "enjoy hunting, fishing, and playing softball, tennis, and volleyball" due to his back and knee problems. (Tr. 287). Yet as the ALJ pointed out, at an appointment with Laura Lewis Mason ("Mason"), ANP-BC, at the University at Buffalo Neurosurgery on January 13, 2016, Basta indicated that he had recently been hunting with friends. (Tr. 318).

Accordingly, I find that the ALJ did not "mischaracterize" Basta's activities of daily living. The ALJ referenced evidence both supportive of and contrary to Basta's impairments. Weighing this evidence, the ALJ acted within his discretion in concluding that Basta had a "greater functional ability than alleged." (Tr. 23). *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *see also Prue v. Comm'r of Soc. Sec.*, 2014 WL 37669, *10 (D. Vt. 2014) ("[i]t was proper for the ALJ to consider [plaintiff's] daily activities in determining his RFC").

In addition, the ALJ also considered the medical opinions in the record. In doing so, the ALJ assigned "great weight" to Liu's opinion. (Tr. 23). Liu conducted an internal medicine examination of Basta on January 23, 2015. (Tr. 289-93). Liu noted that Basta presented with complaints of "whole body joint pain," which was "worse in the low back." (Tr. 289). As a result, Basta indicated, among other things, that he could "walk two block and change position after ten minutes while sitting or standing." (*Id.*). Liu indicated that Basta "appeared to be in no acute distress[,] [g]ait [was] walking slowly[,] [could] walk on heels and toes with moderate difficulty because of low back pain[,] [s]quat 30% because of low back pain[,] [s]tance normal[,] [u]sed no assistance devices[,] [n]eeded no help changing for exam or getting on and off exam table[, and was] [a]ble to rise from chair without difficulty." (Tr. 290-91). Basta had limited lumbar range of motion, but had no sensory deficit and had full strength in his upper and lower extremities. (Tr. 291-92). Based on this exam, Liu opined that Basta had "mild to moderate limitation for prolonged walking, bending, and kneeling," and that he "should avoid moderate exercise activity because of [his] cardiac condition." (Tr. 292).

The ALJ gave this opinion "great weight" because Liu was "familiar with the Regulations, and he personally examined [Basta]," which "increased the probative value of the opinion."

11

(Tr. 23). In the ALJ's view, Liu's opinion was also "generally consistent with the record as a whole, which although document[ed] [Basta's] various conditions, otherwise show[ed] that the [Basta's] conditions have been relatively controlled and stabilized with treatment." (Tr. 23). Notably, Liu did not opine that Liu had any sitting limitations.

Contrary to Basta's contention, Liu's opinion is not so vague as to render it useless. It is settled that "the use of phrases such as 'moderate' or 'mild' by a consultative examiner does not automatically render the opinion impermissibly vague." *Rosenbauer v. Astrue*, 2014 WL 4187210, *16 (W.D.N.Y. 2014) (collecting cases). "Instead, when those opinions are based on clinical findings and an examination of the claimant, the conclusion can serve as an adequate basis for the ALJ's ultimate conclusion." *Id.*

Here, Liu based his opinion on his interview and physical examination of Basta, as well as a blood pressure evaluation, lumbosacral spine x-ray, and left knee x-ray. (Tr. 292, 294-96). Thus, Liu's opinion was not vague and the ALJ was entitled to rely on it as substantial support for the RFC determination. *See, e.g.*, *Rosenbauer*, 2014 WL 4187210 at *16 (consultative opinion using the term "moderately" was not vague where it was based on doctor's review of claimant's spinal x-rays, as well as his interview and physical examination of claimant); *Tudor v. Comm'r of Soc. Sec.*, 2013 WL 4500754, *12 (E.D.N.Y. 2013) ("Since [consultative examiner's] opinion was supported by 'additional information,' i.e., objective medical findings, her opinion is not vague and provided an adequate basis for the ALJ to infer that plaintiff is capable of performing the exertional requirements of sedentary work").

I also disagree with Basta that the ALJ should have given greater weight to the opinions of Hurley and Brattlie, to which the ALJ gave "partial weight." (Tr. 23). It is evident that the ALJ properly considered the opinions and acted within his discretion in partially discounting their

12

significance. First, the ALJ correctly stated that neither Hurley nor Brattlie were "acceptable medical sources," and thus, the opinions were not "subject to the presumption of deference accorded to treating physicians or other acceptable medical sources." *Perez v. Berryhill*, 2019 WL 696911, *6 (W.D.N.Y. 2019).

In any event, though, the ALJ did not discount Hurley's and Brattlie's opinions solely because they were non-acceptable medical sources. Instead, the ALJ weighed the opinions against the medical evidence, specified above. (Tr. 23-24 (ALJ decided that the "extreme nature of the limitations given [by Hurley and Brattlie] [was] also generally inconsistent with the record as a whole, including [Basta's] lack of distress, normal strength, normal gait, stable heart condition, controlled diabetes, and the extent of [Basta's] daily activities")). In my view, nothing was deficient about the ALJ's consideration of these opinions. *See, e.g.*, *Gnojek v. Comm'r of Soc. Sec.*, 2019 WL 4688734, *3 (W.D.N.Y. 2019) ("Here, the ALJ properly considered Murphy's and Coles's opinions. He did not discount them solely because they came from non-acceptable medical sources; rather, he determined that even if Murphy and Coles were acceptable medical sources, their opinions [were] not supported by the record as a whole[.]") (quotations omitted).

In short, while "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision," the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order); *see also Veino*, 312 F.3d at 588. The ALJ properly arrived at an RFC determination supported by substantial evidence.

## CONCLUSSION

For the reasons set forth above, plaintiff Lawrence Basta's motion for judgment on the pleadings (Dkt. # 10) is granted in part, but only to the extent that the matter is remanded for further proceedings consistent with this decision relative to development of the record concerning step five of the sequential evaluation, especially concerning whether plaintiff had transferrable skills.

The Commissioner's cross motion (Dkt. # 11) is granted in part. This Court concludes that the ALJ's decision that the plaintiff had the RFC to perform sedentary work, with appropriate conditions, is supported by substantial evidence and is affirmed as to that point.

On remand to the Commissioner, the ALJ must develop the record further to support a finding on step five relating to the specific skills that Basta acquired from his past relevant work and extent to which those skills are transferrable to other employment.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 10, 2019.